ORDERED.

Dated:  August 30, 2022

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re

James Anthony Narcise,

        Debtor(s).

Case No.  8:21-bk-03580-RCT
Chapter 13

**MEMORANDUM DECISION AND ORDER ON OBJECTION
TO CLAIM NO. 7 OF REPUBLIC BANK & TRUST COMPANY**

      Before the Court is Debtor James Anthony Narcise's Objection to Claim No. 7 of Republic Bank & Trust Company (Doc. 56) (the "Objection"); and the response to the Objection (Doc. 60), filed by Republic Bank & Trust Company ("Republic").  The Objection was subject of a hearing on July 20, 2022, at which the Court heard argument of the parties and at the end of which the parties were offered five business days to file briefs in support of their respective positions after which the Court would take the matter under advisement.  Although a day late, Republic filed a brief (Doc. 66) and although not necessarily authorized, Debtor filed a response to Republic's brief (Doc. 67).  These matters notwithstanding, the Court has considered both parties' post-hearing briefs.

      Debtor's Objection raises two issues: first, the applicable interest rate and second, the amount of attorney's fees to be included in the claim over the total amount of an amended final

judgment of foreclosure entered on June 2, 2021 (the "Amended Judgment"),[1] upon which the claim is based.[2] At the hearing, the parties advised that they had resolved the second issue, but did not advise the Court of the terms of the agreement. Thus, what remains for the Court to resolve is the question of the applicable interest rate.

Debtor, relying on 11 U.S.C. § 502(b),[3] contends that the applicable interest rate should be 4.31%, which appears on the face of the Amended Judgment, as that was the rate in effect "as of the date of the filing of the petition." Republic, relying on § 502(a) and Federal Rule of Bankruptcy Procedure ("Rule(s)") 3001(f), contends that the applicable rate is a variable rate changing annually in accord with Florida law as expressly stated in the Amended Judgment. Republic states that its claim, which provides for a present rate of 6.77%, accurately reflects the Florida judgment rate as of the date the original judgment was entered.

While each side makes valid points, the Court finds that the parties' arguments are incomplete. As explained below, based upon the undisputed facts, the analysis is more nuanced and involves more than the simple selection of a single applicable interest rate.

<u>Background</u>

Debtor commenced this Chapter 13 case on July 8, 2021. On his Schedule A/B, Debtor notated his sole ownership interest in real property located at 13224 Hazelcrest St., Spring Hill, Florida (the "Property"), valuing the parcel at $150,775. Though it is undisputed that the Property is Debtor's principal residence, the Property has not been claimed as exempt. On Schedule D, Debtor listed Republic with a claim fully secured by the Property in the amount of

---

[1] Debtor inaccurately states that the Amended Judgment is dated July 1, 2021, which is an understandable mistake given the handwritten date. While Republic has not corrected Debtor, the Court takes judicial notice of the state court's docket which reflects that the Amended Judgment was entered June 2, 2021. Fed. R. Evid. 201.
[2] The Amended Judgment is among several exhibits attached to Republic's proof of claim.
[3] Statutory references are to 11 U.S.C. §§ 101–1532 ("Code" or "Bankruptcy Code"), unless otherwise stated.

$56,289.23, which is the amount of the Amended Judgment.[4]

Debtor's Chapter 13 plan proposes to pay Republic's claim in full at 4.31% interest.[5] Though it opposed the Objection, Republic has not objected to confirmation of Debtor's plan.

Republic timely filed its proof of claim.[6] It asserted a claim of $60,877.07,[7] fully secured by the Property and based upon the Amended Judgment. Republic claims a variable rate of "[p]ost-judgment statutory interest (currently at 6.77%)."[8]

At the hearing, the Court observed that it appeared that Republic was oversecured in the Property. The parties agreed and so stipulated. It was also agreed that the debt instruments underlying Republic's claim had fully matured prepetition. Recognizing the latter fact, Debtor's counsel confirmed that Debtor's plan proposes to pay Republic's claim in full, with interest.

*The Foreclosure Action[9] & the Amended Judgment*

Republic commenced its foreclosure action against the Property in April 2019. On summary judgment, the state court entered a final judgment of foreclosure dated September 17, 2019, in the amount of $45,157.92. That judgment provided for an annual interest rate of 6.89%,[10] to be adjusted annually per Florida Statute § 55.03(3). A foreclosure sale was set for November 26, 2019, but it was cancelled upon Debtor's filing of a prior Chapter 13 case.[11]

---

[4] Doc. 1.
[5] Doc. 2.
[6] Claim No. 7-1.
[7] Republic calculates the total debt as follows: a principal balance of $33,655.87, interest of $7,489.26, and fees and costs of $20,357.80. Claim No. 7-1 p.4 (Official Form 410A).
[8] *Id.*
[9] *Republic Bank & Trust Co. v. Narcise*, No. 2019-CA-000485 (Fla. 5th Cir. Ct. Hernando Cty. filed Apr. 23, 2019).
[10] Interestingly, the judgment rate "at the time a judgment [was] obtained," Fla. Stat. § 55.03(3), was 6.77%, as noted by Republic in its response to the Objection. The rate did not rise to 6.89% until Oct. 1, 2019. Regardless of the reason for the discrepancy, the interest rate to be applied was expressly stated in the judgment. *See* MyFloridaCFO, Accounting and Auditing, Current Judgement Interest Rates, https://www.myfloridacfo.com/division/aa/local-governments/judgement-interest-rates (last visited Aug. 28, 2022). The Court takes judicial notice of the current and historic judgment interest rates as published by Florida's Chief Financial Officer on his official website (hereafter, the "Official Judgment Interest Rates"). Fed. R. Evid. 201.
[11] *In re Narcise*, No. 8:19-bk-11220-RCT (Bankr. M.D. Fla. filed Nov. 25, 2019) (the "Prior Case").

In March 2021, several months after Debtor's prior bankruptcy was dismissed,[12] Republic moved to amend its final judgment to include additional fees and costs and to reset the foreclosure sale. After a hearing on notice, the state court granted the bank's motion and entered the Amended Judgment, setting a new sale date for July 22, 2021. The rescheduled sale was cancelled due to the filing of this bankruptcy.

In the Amended Judgment, the state court accounts for (a) unpaid interest accrued through September 17, 2019, the date of original judgment, (b) "Judgment Interest" accrued from entry of the original judgment through May 13, 2021, the date of the hearing on the bank's motion to amend the final judgment, and (c) attorney's fees expended through March 17, 2021, the date the motion to amend the final judgment was filed.

The Amended Judgment states, in relevant part:

> The total sum [of $56,289.43] will bear interest at the prevailing statutory interest rate of 4.31 percent per year from this date through December 31[, 2021]. Thereafter, on January 1 of each succeeding year until the judgment is paid, the interest rate will adjust annually in accordance with [§] 55.03(3), Florida Statutes.

## Discussion

As suggested above, the parties appear to view the matter as a determination of a single applicable rate of interest. But, in this case, it is not so simple.

To begin, the Court rejects Republic's contention raised in its post-hearing brief that the anti-modification provisions of § 1322(b) apply because the Property is Debtor's principal residence. Ordinarily, that would be true. But there is a rare exception,[13] and that exception

---

[12] The Prior Case was dismissed for non-payment before confirmation. Though raised in the Prior Case on Debtor's objection to Republic's claim in that case, the issue of the calculation of post-judgment interest was withdrawn by Debtor before the Court's adjudication of the claim objection. Prior Case Docs. 63 & 65.

[13] *See, e.g.*, *In re Smith*, 594 B.R. 376, 379 (Bankr. W.D. La. 2018); *In re Gray*, 530 B.R. 501, 502 (Bankr. S.D. Fla. 2015); *In re Padgett*, 273 B.R. 277, 278–79 (Bankr. M.D. Fla. 2001); *see generally Am. Gen. Fin. Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203 (11th Cir. 2002) (concluding that when it applies, § 1322(c)(2), properly interpreted, permits the modification of a secured creditor's claim even when secured by the debtor's principal residence).

applies here. It is undisputed that the underlying mortgage, now reduced to the Amended Judgment, matured prepetition, *i.e.*, "before the date on which the final payment under the plan is due[.]"[14] Thus, to the extent Debtor seeks to modify Republic's claim under § 1325(a)(5), he may do so. But whether Debtor's proposed treatment of Republic's claim is appropriate is, ultimately, an issue for confirmation.

Presently before the Court is an objection to claim, making the relevant question whether Republic's secured claim should be allowed and if so, in what amount. Because it is undisputed that Republic is oversecured in the Property, the Court must examine both §§ 502 and 506(b).

Republic is correct that under § 502(a), a claim for which a proof of claim is filed is, by default, deemed allowed. But § 502(a) has an important caveat, specifically that the claim is deemed allowed "unless a party in interest . . . objects," as Debtor has done here.

Republic is also correct that under Rule 3001(f), if a proof of claim is properly executed and filed, it is "prima facie evidence of the validity and amount of the claim." But where the objecting party can produce evidence "at least equal in probative force to that offered by the proof of claim," the evidentiary burden shifts back to the claimant to prove the validity and amount of its claim.[15] An objecting party may successfully shift the burden back to the claimant by "producing specific and detailed allegations that place the claim into dispute[ or] by the presentation of legal arguments based upon the contents of the claim and its supporting documents" that cast doubt upon the validity of the claim.[16]

---

[14] § 1322(c)(2). The full text provides that § 1322(b)(2) does not apply "in a case in which last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to [§ 1325(a)(5)]."

[15] *In re Foley & Assocs. Const. Co., Inc.*, No. 04-05589-BKC-3F7, 2007 WL 2316939, at *1 (Bankr. M.D. Fla. Aug. 9, 2007) (quoting *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007)); *see, e.g.*, *In re Baggett Bros. Farm Inc.*, 315 F. App'x 840, 843 (11th Cir. 2009).

[16] *In re Foley & Assocs.*, 2007 WL 2316939, at *1 (quoting *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007)).

Debtor has objected to the current interest rate as stated in the proof of claim, correctly noting that the Amended Judgment, upon which the claim is based, expressly provides for a different rate of interest. The Court finds this sufficiently calls the validity of the interest rate into question, shifting the ultimate burden on the issue back to Republic.

Debtor is, of course, correct that, having filed his objection, the Court, under § 502(b), must "determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount . . . ." Debtor emphasizes that § 502(b) requires the Court determine a claim "as of the date of the filing of the petition." Accordingly, Debtor argues that the applicable interest rate is 4.31%—as expressly stated in the Amended Judgment.

Republic does not necessarily dispute that as of the date of the petition, the Amended Judgment provided for a 4.31% interest rate.[17] Rather, it emphasizes that the Amended Judgment also expressly provides for a variable rate, as notated on the proof of claim, that changes annually in accord with § 55.03(3) of the Florida Statutes.

Here, based upon the plain language of the Amended Judgment, the Court finds that as of the date of the petition, the applicable interest rate was 4.31%. Based upon that rate, the Court calculates that interest in the amount of $246.05[18] accrued from the date of the Amended Judgment to the filing of the petition. But it is unclear how Republic calculated interest in its claim. And given the unspecified resolution of the attorney's fees issue, the Court cannot

---

[17] Republic's papers do not take a clear position on this point. But, at the hearing, Republic's counsel suggested that the rate applicable to the Amended Judgment was 6.77% and was correctly indicated in the proof of claim. This suggestion is belied both by the language of the Amended Judgment and the Official Judgment Interest Rates, upon which Republic's argument rests. Republic's principal argument is that the judgment rate is variable, as provided in Fla. Stat. § 55.03(3). The Court agrees. Since the language of the Florida statute is clear and as the Official Judgment Interest Rates cannot be reasonably disputed, the Court declines to engraft upon Republic's papers an argument that the applicable rate as of the filing of the instant case was 6.77% based upon counsel's statements, which were, or so it appeared to the Court, largely extemporaneous. Having reviewed the file in the Prior Case, the Court presumes that the proof in claim in this case was hurriedly copied from the claim filed in the Prior Case, thus explaining the 6.77% rate.

[18] Using a daily rate of .0118082%, the Court calculates that interest of $6.65 accrued daily for 37 days.

calculate with any degree of accuracy what the allowed secured claim should be.[19]

But the fact that the Court has determined the applicable interest rate as of the petition date does not fully resolve the issue.  It is undisputed that Republic is oversecured.  Therefore, under § 506(b), Republic holds—as part of its allowed claim—a claim for interest from the date of the petition until confirmation of Debtor's Chapter 13 plan.[20]

Described as an "exception to the general rule that a creditor cannot claim interest accruing on debts during bankruptcy,"[21] § 506(b) of the Bankruptcy Code states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

The statute is quite plain.  Accruing interest due the oversecured creditor is determined pursuant to the contract or, as here, pursuant to "State statute under which [the] claim [arises]."

The Amended Judgment provides for a "[then-]prevailing statutory interest rate" of 4.31% per year from the date of the judgment until the end of 2021, and "[t]hereafter, on January 1 of each succeeding year until the judgment is paid, the interest rate will adjust annually in accordance with [§] 55.03(3), Florida Statutes."  Florida Statues § 55.03(3) provides:

> The [judgment] interest rate is established at the time a judgment is obtained and such interest rate shall be adjusted annually on January 1 of each year in accordance with the interest rate in effect on that date as set by the Chief Financial Officer until the judgment is paid . . . .

As applied, Republic is entitled, as part of its allowed secured claim, to interest on the amount of the Amended Judgment calculated at a rate as follows:  4.31%, from the date of the

---

[19] It is not contested that Republic has a valid secured claim.  The parties' dispute regarding the claim is not as to the validity of the claim but as to its amount.
[20] *First United Sec. Bank. v. Garner (In re Garner)*, 663 F.3d 1218, 1219–21 (11th Cir. 2011) ("An oversecured creditor can recover post-petition interest under Section 506(b) as part of its allowed claim."); *see, e.g., In re Smith*, 594 B.R. 376; *In re Stringer*, 508 B.R. 668 (Bankr. N.D. Miss. 2014).
[21] *In re Garner*, 663 F.3d at 1219; *see, e.g., In re Stringer*, 508 B.R. at 671.

petition through December 31, 2021; and 4.25%, beginning January 1, 2022,[22] and continuing until the earlier of December 31, 2022, or the date of confirmation of Debtor's plan.[23]  Should the plan not be confirmed this year, and until such time as the plan is confirmed, the rate would continue to adjust annually as provided by Florida law.  Thus, to this extent, Republic is correct that the applicable interest rate is variable and changes annually in accord with § 55.03(3) of the Florida Statutes.

But again, the fact that the Court has set forth how interest accrues as part of Republic's allowed secured claim during the interim period between the bankruptcy filing and confirmation does not fully resolve the issue.  Still remaining is the issue of what is the applicable interest rate post-confirmation.

The Eleventh Circuit has held that despite the lack of temporal limitation, § 506(b) has no application after confirmation of Chapter 13 plan.[24]  The Eleventh Circuit explains:

> Once the debtor invokes the "cram-down" power of Section 1325(a)(5)(B), the creditor's rights, including the rate of interest, are subject to modification in bankruptcy.
>
> If Sections 506(b) and 1325(a)(5)(B) both apply post-confirmation, the creditor would receive a windfall. *Id.* at 424–25. The amount of the secured claim is set at confirmation and includes accrued post-petition contract interest under Section 506(b). *See id.* at 423 ("Section 506(b) thus defines the allowed claim of an oversecured creditor; treatment of that claim after confirmation is governed by Section 1325."). If a creditor accrues interest at the contract rate post-confirmation, interest upon interest would be compounded and exceed the present value of the claim under Section 1325(a)(5)(B).[25]

Thus, even in the case of an oversecured creditor, the question of the appropriate, post-confirmation interest rate becomes whether the creditor is receiving "present value" on its

---

[22] *See* Official Judgment Interest Rates, *supra*, note 10.
[23] The Court assumes based on statements at the hearing that Debtor will be able to confirm a plan this year.
[24] *In re Garner*, 663 F.3d at 1220–21; *see also In re Smith*, 594 B.R. at 382–83; *In re Stringer*, 508 B.R. at 671.
[25] *In re Garner*, 663 F.3d at 1220–21 (citing *Key Bank Nat'l Ass'n v. Milham (In re Milham)*, 141 F.3d 420 (2d Cir. 1998)).

allowed secured claim.[26] In other words, the analysis turns to the appropriate *Till* rate.[27]

The parties have not yet framed whether the interest rate proposed in Debtor's plan, which happens to be the 4.31% rate provided in the Amended Judgment, is appropriate under *Till*. Accordingly, the Court will not address the matter until confirmation.

So, where does this leave the parties? Typically, the Court would calculate the amount of Republic's allowed secured claim. But, as indicated above, the Court is without all necessary information to do so.

The parties framed the sole issue on the Objection as the applicable interest rate. The Court has set forth above either the appropriate rate or the methodology for determining the appropriate rate at each of the relevant timeframes: prepetition, post-confirmation, and the interim period between the filing and date on which the plan is confirmed. Hopefully, this roadmap will assist the parties and the Chapter 13 trustee calculate Republic's allowed secured claim for purposes of its treatment in Debtor's Chapter 13 plan.

For these reasons, it is **ORDERED** that the Objection (Doc. 56) is **SUSTAINED, in part**. The prepetition interest rate is 4.31%. Republic is entitled, pursuant to § 506(b), to interest as part of its allowed secured claim, which shall be calculated as provided herein. The Court does not address here an appropriate *Till* rate for payment of the allowed secured claim.

Attorney M. Eric Barksdale is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of its entry.

---

[26] *See In re Stringer*, 508 B.R. at 672–73 ("Oversecured creditors . . . are entitled to interim period interest pursuant to § 506(b) . . . . [But a]t confirmation, the interest rate payable on a crammed-down secured claim is governed by § 1325(a)(5)(B)'s present value requirement."); *see also In re Smith*, 594 B.R. at 382–83.

[27] *See, e.g.*, *In re Smith*, 594 B.R. at 380–83; *cf. In re J.C. Householder Land Tr. #1*, 501 B.R. 441, 452–53 (Bankr. M.D. Fla. 2013) (discussing, in a Chapter 11 case, *Till* and the determination of an "appropriate interest rate" for cramming down a creditor); *see generally Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951 (2005).